SO ORDERED,

**Judge Katharine M. Samson**
United States Bankruptcy Judge
Date Signed: September 27, 2018

The Order of the Court is set forth below. The docket reflects the date entered.

___

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE:   ROBERT JOELY WHITE | CASE NO. 18-50385-KMS |
| DEBTOR | CHAPTER 13 |

### OPINION AND ORDER GRANTING MOTION FOR RELIEF FROM STAY

This matter came on for hearing on the Amended Motion for Relief from Automatic Stay, for Abandonment and for Waiver of Fourteen (14) Day Stay ("Motion for Relief") (Ch. 13 ECF No. 70)[1] by Community Bank, Coast ("Bank") with responses (Ch. 13 ECF Nos. 86, 87, 88) by pro se debtor Robert Joely White. The Bank seeks relief for two purposes: (1) to pursue its remedies as to a strip shopping center ("Largo Plaza") and its leases and rents, which White pledged as collateral for loans; and (2) to allow the Bank to present its defenses and prosecute its counterclaim in a pending arbitration action filed by White. This proceeding is within the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(G). For the reasons that follow, the Motion for Relief is granted.

---

[1] "Ch. 13 ECF No. ___" indicates a citation to the docket in the current case. "Ch. 11 ECF No. ___" indicates a citation to the docket in Debtor's previous case.

# BACKGROUND

The Motion for Relief is the culmination of events that began more than ten years ago with White's 2007 purchase of Largo Plaza, financed by the Bank with two loans totaling $1,194,872. Ch. 11 ECF No. 247-5 at 3.[2] Over the years, the loans were modified and combined into one note, which was renewed in 2014 with a principal of approximately $980,065 ("Promissory Note"). *Id.* at 22. White defaulted on the Promissory Note. According to the Bank, the current principal balance is approximately $1,032,789. Ch. 13 ECF No. 91 at 49.

White regretted buying Largo Plaza almost immediately; the income from its tenant businesses was significantly less than he expected. *See* Ch. 11 ECF No. 247-5 at 20. So three months after the purchase, White sued the seller in state court. Ch. 11 ECF No. 247-1 at 4-7; No. 247-5 at 22. White did not prosecute that lawsuit to a final judgment, instead dismissing it in exchange for the seller's dismissing a simple-assault-by-threat criminal charge and a $2.5 million defamation lawsuit against White. *See* Ch. 11 ECF No. 247-5 at 22.

In January 2017, White filed a ten-count complaint in state court against the Bank, alleging negligent and fraudulent misrepresentation; conspiracy to conceal fraud; breach of contract; undue influence; breach of ordinary care, good faith, and fair dealing; promissory estoppel; equitable estoppel; tort of deceit; wrongful interference; and conversion in connection with White's purchase of Largo Plaza. Ch. 11 ECF No. 247-5 at 1-52. White sought relief that included an award of more

---

[2] To place the current matter in context, the Court takes judicial notice of certain documents of record in White's previous case under chapter 11, *In re White*, No. 17-50600-KMS (Bankr. S.D. Miss., case dismissed Jan. 26, 2018), *appeal dismissed*, No. 1:18-CV-66-HSO-JCG (S.D. Miss. Feb. 28, 2018). "A court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985). Although "a previously filed court document will generally not be competent evidence of the truth of the matters asserted therein," its filing does provide "competent evidence of certain facts—that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made." *Nantucket Inv'rs II v. Cal. Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 205 (3d Cir. 1995).

2

than $14.5 million in damages, a satisfied deed of trust to Largo Plaza, and a pre-trial order vacating his arbitration agreement with the Bank so a jury could decide the dispute. *Id.* at 51-52. The Bank responded with a motion to dismiss or alternatively to compel arbitration, attaching arbitration agreements dated 2007, 2009, 2010, and 2011. Ch. 11 ECF No. 247-1 at 1-25.

Concerned that his lawsuit would be dismissed because he was unable to get discovery, and therefore evidence, from the Bank, White filed a motion to withdraw his complaint. Ch. 11 ECF No. 25 at 4. Five days later, he filed a complaint with the American Arbitration Association ("Arbitration Complaint"). *Id.* The Bank scheduled a foreclosure sale. *Id.*

## I. The Chapter 11 Case

On March 28, 2017, proceeding pro se, White filed a petition under chapter 11. He blamed his purchase of Largo Plaza for the financial troubles that led to his filing. Ch. 11 ECF No. 205 at 1. He later testified that Largo Plaza never generated a positive cash flow, losing between $24,000 and $100,000 a year. Ch. 11 ECF No. 316 at 97-98.

Two days after White filed the case, the Bank moved to prohibit or condition his use of the Bank's cash collateral, i.e., the tenants' rent payments, on the grounds that White had allowed the property insurance to lapse, had not paid the previous two years' property taxes, and had not paid the Bank in a year. Ch. 11 ECF No. 15 at 2. White responded in opposition and alternatively moved to compel arbitration. Ch. 11 ECF No. 25.

Ultimately, three orders on cash collateral were entered in favor of the Bank. Ch. 11 ECF Nos. 43, 81, 162. The third order was entered on the Bank's motion to compel, which alleged that White had "totally failed and refused to comply with the terms of the [previous] Orders," Ch. 11 ECF No. 106 at 2. The order on the motion to compel included a deadline for White to comply, failing which the Court would consider a motion to convert the case to another chapter. Ch. 11 ECF No. 162.

The deadline for White's compliance came and went. The Bank filed a motion for relief from stay and for abandonment, arguing under 11 U.S.C. § 362(d)(2) that White lacked equity in Largo Plaza and that the property was not necessary for an effective reorganization. Ch. 11 ECF No. 176 at 2. White responded in opposition and again moved to compel arbitration, requesting that if the stay were lifted, the Bank be compelled to arbitrate and to stay foreclosure until the arbitrator rendered judgment. Ch. 11 ECF No. 189 at 8. Stay relief was denied, the Court finding that in light of the relatively short time before the deadline for White to file a disclosure statement and plan, the Bank's request for relief was premature. Ch. 11 ECF No. 210.

Meanwhile, before entry of the order denying the Bank's motion for relief, White filed his own "Motion to Lift Stay to Compel Community Bank to Arbitration," requesting that he and the Bank be allowed to proceed to arbitration and that the Bank be stayed from foreclosing on Largo Plaza until the arbitrator adjudicated their claims. Ch. 11 ECF No. 205 at 2. The Bank, responding in opposition, asserted that the arbitration agreement provided that during the pendency of any arbitration proceeding, the Bank was not precluded from seeking other relief, including a sale. Ch. 11 ECF No. 248 at 3. White's motion was denied in an order providing that the stay would be lifted as to the Bank "to allow it to fully participate in the arbitration process including but not limited to the Bank's ability to assert any appropriate counterclaims or affirmative defenses." Ch. 11 ECF No. 250.

The Bank filed a motion to convert the case to chapter 7. Ch. 11 ECF No. 270. The motion asserted several grounds, including that the Bank would again be forced to pay the annual property taxes, as it had the preceding two years, and that White himself had indicated his inability to comply with the cash collateral orders in emails to the Bank's counsel. *Id.* at 2.

4

By this time, White had filed a disclosure statement and plan. Ch. 11 ECF Nos. 213, 214. The Bank objected to the disclosure statement. Ch. 11 ECF No. 272. The motion to convert and the objection to the disclosure statement were heard at the same time.

Finding from the bench that White could not propose a confirmable plan, the Court dismissed the case. Ch. 11 ECF No. 290. Within a week of the dismissal, the Bank filed its Answering Statement/Counterclaim in White's arbitration proceeding. Ch. 13 ECF No. 86 at 16-17. The Bank also rescheduled the foreclosure sale. Attempting to forestall the sale, White appealed the dismissal. Ch. 11 ECF No. 305; Ch. 13 ECF No. 25 at 2. The appeal was dismissed as untimely. Ch. 11 ECF No. 312.

## II. The Chapter 13 Case

The next day, March 1, 2018, White filed his current case under chapter 13.

The Bank filed the Motion for Relief. Ch. 13 ECF No. 70. White responded in opposition and, as to the arbitration proceeding, stated that a preliminary hearing had been held approximately three weeks earlier and that he could not afford to pay his share of what the arbitration would cost. Ch. 13 ECF No. 87 at 1, 3. Further, he had found a jurisdictional provision in the Promissory Note that he believed superseded the arbitration agreements. *Id.* White also observed that the Bank had not filed a proof of claim and that the claims bar date had passed. *Id.* at 2. White asked that the Bank be denied relief from the stay as to Largo Plaza and as to the Bank's Counterclaim. *Id.* at 3.

The Motion for Relief was heard and taken under advisement. That same day, White filed a 60-month chapter 13 plan ("Plan") that did not include payments to the Bank. Ch. 13 ECF No. 90.

The chapter 13 Trustee objected to the Plan on multiple grounds, including that White's schedules showed a negative disposable income, the payment amount was insufficient to fund the

5

Plan, the Plan failed to provide treatment for the Bank, and White's secured and unsecured debts might exceed the amounts permissible for a chapter 13 debtor. Ch. 13 ECF No. 111 at 2. The Bank joined in the objection. Ch. 13 ECF No. 118. White responded in opposition, again noting that the Bank did not file a proof of claim. Ch. 13 ECF No. 119 at 2.

The hearing on the objection focused on White's eligibility to be a debtor under 11 U.S.C. § 109(e), which sets out the maximum amounts of secured and unsecured debt permissible for a debtor filing under chapter 13. Finding that White's schedules showed debts exceeding the statutory limits, the Court held that White had fourteen days to convert the case to another chapter or the case would be dismissed. Ch. 13 ECF No. 126.

White moved for reconsideration, requesting a ruling on the Motion for Relief so he could make an informed decision about whether to convert or allow his case to be dismissed. Ch. 13 ECF No. 128 at 1. The motion for reconsideration was granted. Ch. 13 ECF No. 129.

## FINDINGS OF FACT

The Bank has a valid, perfected lien on Largo Plaza under the Modification of Deed of Trust that secures the Promissory Note. *See* Ch. 13 ECF No. 91 at 1-9. It also has a valid assignment of leases and rents giving it the right to collect tenant rents upon White's default on the Promissory Note. *Id.* at 10-49.

The Bank is undersecured. According to uncontroverted testimony by the Bank's witness, the principal outstanding balance on the Promissory Note is approximately $1,032,789. Ch. 13 ECF No. 106 at 11. The Bank's appraiser testified that Largo Plaza is currently worth $725,000. *Id.* at 26. White's Schedule D shows an even lower value. *See* Ch. 13 ECF No. 46 at 13.

According to uncontroverted testimony by the Bank's witness, White stopped paying on the Promissory Note in April 2016, the Promissory Note matured in April 2017, the Bank has paid three years of property taxes and has maintained force-placed insurance since 2017, and White is

6

using the Bank's cash collateral under its assignment of leases and rents without the Bank's permission or the Court's approval. Ch. 13 ECF No. 106 at 10-13. White's proposed Plan does not include any payments to the Bank.

White cannot pay his debt to the Bank and operate Largo Plaza; the numbers simply do not add up. Factoring in debt service, taxes, and insurance, Largo Plaza would lose $100,000 a year. Ch. 13 ECF No. 106 at 34. And White cannot personally subsidize Largo Plaza. His Schedule J shows that even with no debt service and the Bank paying the taxes and insurance, White's household is hemorrhaging cash at the rate of more than $5,000 a month. Ch. 13 ECF No. 46 at 30.

White's amended Arbitration Complaint is set to be heard in three months. Ch. 13 ECF No. 106 at 62. It alleges the following eight counts against the Bank in connection with White's purchase of Largo Plaza: fraudulently obtained contract, breach of contract/acting in commercially unreasonable manner, breach of good faith and fair dealing/bad faith, civil conspiracy, unjust enrichment, intentional infliction of emotional distress, breach of fiduciary duty/tortious interference, and equitable reformation of the Promissory Note. Ch. 13 ECF No. 86 at 18-32. It seeks unspecified compensatory and punitive damages. *Id.* at 30. There is no amended Answering Statement/Counterclaim of record, but in its earlier-filed Answering Statement, the Bank denied all White's allegations and legal conclusions and pleaded the statute of limitations. *Id.* at 16.

The Counterclaim seeks an award of all sums due and to become due under the Promissory Note—principal, three years of taxes, insurance, late fees, interest, and attorney's fees—totaling approximately $1,165,330; and all costs and fees, including attorney's fees, incurred in the arbitration proceeding. Ch. 13 ECF No. 86 at 16-17. The Counterclaim also seeks an injunction prohibiting White from "slanderous publications/statements" about the Bank's officers, employees, attorneys, and agents. *Id.* at 16.

## CONCLUSIONS OF LAW

**I. The Bank is entitled to stay relief as to Largo Plaza and its leases and rents.**

*A. The Bank is entitled to stay relief under § 362(d)(1) for lack of adequate protection.*

White seems to believe that because the Bank did not file a proof of claim, the Bankruptcy Code allows him to pay the Bank nothing while using its collateral for five years. This idea is mistaken:

> "[A] Chapter 13 debtor cannot remain in possession of a secured creditor's collateral during the pendency of its plan where the debtor's plan makes no provision for the creditor's value of its security and where the sole reason for the disallowance of the creditor's secured claim was the creditor's failure to file a timely proof of claim."

*In re Hogan*, 346 B.R. 715, 723 (Bankr. N.D. Tex. 2006) (quoting *In re Lee*, 182 B.R. 354, 357 (Bankr. S.D. Ga. 1995)). Protection of the value of a secured creditor's asset begins with the filing of the petition, not with the filing of a claim. *See Chase Manhattan Bank USA NA v. Stembridge (In re Stembridge)*, 394 F.3d 383, 387 (5th Cir. 2004).

On motion by a party in interest and after notice and a hearing, a court shall grant relief from the stay when a debtor fails to adequately protect that party's interest in property. 11 U.S.C. § 362(d)(1). A secured creditor is "a party in interest" under § 362(d) whether or not it has filed a claim. *Bourgeois v. Rhoades (In re Rhoades)*, 38 B.R. 63, 66 (Bankr. D. Vt. 1984). Adequate protection can take the form of periodic cash payments, an additional or replacement lien, or other relief that gives the creditor the "indubitable equivalent" of the creditor's interest in the property. 11 U.S.C. § 361(1)-(3). For an oversecured creditor, an equity cushion may provide adequate protection. *In re Haydel Props., LP*, No. 16-51259-KMS, 2017 WL 1155690, at *2 (Bankr. S.D. Miss. Mar. 27, 2017).

8

To establish a prima facie case for cause to lift the stay for lack of adequate protection, a movant must demonstrate two elements: the existence of a claim secured by a lien and a decline or threatened decline in the value of the collateral as a result of the automatic stay:

> [A] movant must initially demonstrate that it holds a claim, secured by a valid, perfected lien upon estate property, and that a decline in the value of its collateral is either occurring or is threatened, against which the creditor is precluded from protecting its interests due to the existence of the automatic stay.

*Id.* (quoting *In re Self*, 239 B.R. 877, 881 (Bankr. E.D. Tex. 1999)). "[A] 'threat' of decline could include, for example, a debtor's failure to maintain adequate insurance on the collateral." *In re Kowalsky*, 235 B.R. 590, 595 n.4 (Bankr. E.D. Tex. 1999). Once the movant has carried its initial burden, the Bankruptcy Code "places squarely on the debtor's shoulders the burden of proving the absence of cause," i.e., either that there is no actual or threatened decline in the collateral's value or that the secured creditor is adequately protected. *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (discussing burden of proof under § 362(g)(2)).

Here, the Bank has established that it holds a claim secured by a valid, perfected lien on Largo Plaza, which is property of the estate. It has also established a threatened decline in the value of its collateral by White's failure to maintain insurance. White, on the other hand, has not proved either that there is no threatened decline or that the Bank is adequately protected. To the contrary, he has failed to pay property taxes and insurance, failed to make any payments on the Promissory Note in two years, and failed to provide for the Bank in the Plan. He continues to use the Bank's cash collateral in violation of § 363(c).[3] And because the Bank is undersecured, there is no equity cushion. The Bank is therefore entitled to relief from the stay under § 362(d)(1) for lack of adequate protection.

---

[3] The debtor may not use cash collateral unless every entity with an interest in the cash collateral consents or unless authorized by the court. 11 U.S.C. § 363(c)(2) (made applicable by § 1304(b) to debtors engaged in business).

*B. The Bank is entitled to stay relief under § 362(d)(2) because White has no equity in Largo Plaza and no prospect for an effective reorganization.*

A court shall grant relief with respect to a stay of an act against property if the debtor has no equity in the property and the property is not necessary to the debtor's effective reorganization. *See* 11 U.S.C. § 362(d)(2). Equity as used in § 362(d) is the difference between the value of the property and the value of all the liens against it. *Sutton v. Bank One, Tex. Nat'l Ass'n (In re Sutton)*, 904 F.2d 327, 329 (5th Cir. 1990). Here, the Bank holds the only lien against Largo Plaza.

The party seeking relief must prove there is no equity. 11 U.S.C. § 362(g)(1). Based on witness testimony and the values White listed in his Schedule D, there is no dispute that White has no equity in Largo Plaza.

The party opposing relief must prove that the property is necessary for an effective reorganization. 11 U.S.C. § 362(g)(2). This standard requires that a reorganization be "in prospect." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-76 (1988). "[I]f there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations," the court should grant relief from the stay. *Canal Place Ltd. P'ship v. Aetna Life Ins. Co. (In re Canal Place Ltd. P'ship)*, 921 F.2d 569, 576 (5th Cir. 1991).

Here, because White is not eligible to be a debtor under chapter 13, his only prospect for an effective reorganization would be under chapter 11. The plan White proposed in his previous chapter 11 case was not confirmed for multiple reasons, including feasibility. Ch. 13 ECF No. 43 at 2. White has presented no evidence that his circumstances have changed in the eight months since that case was dismissed; he is still unable to pay even the taxes and insurance on Largo Plaza. He therefore has no prospect for an effective reorganization, and the Bank is entitled to relief under § 362(d)(2).

## II. The Bank is entitled to stay relief to present its defenses and prosecute the Counterclaim in the arbitration proceeding.

"Cause" to grant relief from the stay under § 362(d)(1) may include a party's desire to proceed with litigation pending in another forum. *In re Consol. FGH Liquidating Tr.*, 419 B.R. 636, 647 (Bankr. S.D. Miss. 2009). Courts considering such requests apply a variety of factor-based tests. *See In re Choice ATM Enters.*, No. 14-44982-DML, 2015 WL 1014617, at *3-5 (Bankr. N.D. Tex. Mar. 4, 2015) (surveying approaches across jurisdictions). "Even among bankruptcy courts in [the Fifth C]ircuit, no single approach prevails." *Id.* at *4. The common denominator is a focus on "the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest," with each request addressed on its own facts. *Hohol v. Essex Indus., Inc. (In re Hohol)*, 141 B.R. 293, 297 (M.D. Pa. 1992).

The twin purposes of the Bankruptcy Code are to give breathing room to a debtor attempting a fresh start and to equally distribute assets among similarly situated creditors. 5 *Collier on Bankruptcy* ¶ 541.01 (Richard Levin & Henry J. Sommer eds., 16th ed.). Lifting the stay as to the Counterclaim would not undermine either purpose and is warranted under the facts.

First, allowing the Bank to prosecute the Counterclaim would result in a complete resolution of the dispute. *See In re Choice ATM Enters.*, 2015 WL 1014617, at *3 n.10 (listing factors from *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)). Second, the Arbitration Complaint and the Counterclaim plead only under state law. *See id.* at *4 (listing factors from *In re White*, 410 B.R. 195 (Bankr. W.D. Va. 2008)).Third, it was White who initiated the arbitration process. *See Prindle v. Countryside Manor, Inc. (In re Countryside Manor, Inc.)*, 188 B.R. 489, 491 (Bankr. D. Conn. 1995) ("Where a debtor institutes a lawsuit and then invokes the protection of [the automatic stay] on a counterclaim, the situation warrants a very thoughtful scrutiny.") (quoting *Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1168 (2d Cir. 1979)). And

fourth, relief from the stay to prosecute the Counterclaim was granted during White's previous case, and as the party bearing the burden of proof, he has presented no evidence why relief should not be granted again.

## CONCLUSION

"The Bankruptcy Code was not intended to relieve [the debtor] of the consequences of an injudicious business deal." *In re Hohol,* 141 B.R. at 299. White regrets buying Largo Plaza. He blames the Bank for his "injudicious" deal. He wants breathing room. *See* Ch. 11 ECF No. 316 at 92. But the breathing room the Code provides to debtors extends only as far as the rights it preserves for creditors. Because of his back-to-back filings, White has received a stay since April 2017, while the Bank has received nothing. That inequity must be corrected.

## ORDER

**IT IS THEREFORE ORDERED** that the Motion for Relief is **GRANTED**, provided, however, that during the pendency of this case, no judgment for the Bank may be entered against White in any court of competent jurisdiction and no action may be undertaken to collect any award the Bank might obtain through the arbitration process; and

**FURTHER ORDERED** that White's interest in Largo Plaza and its rents and leases is abandoned as property of the estate under 11 U.S.C. § 554 and that the fourteen-day stay provided by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is waived.

*##END OF ORDER##*